# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| CHRISTOPHER J. DEANGELO, | : | |
| | : | |
| Petitioner, | : | |
| | : | |
| v. | : | Civ. Act. No. 09-27-LPS |
| | : | |
| G.R. JOHNSON, Warden, and JOSEPH | : | |
| R. BIDEN, III, Attorney General | : | |
| of the State of Delaware, | : | |
| | : | |
| Respondents. | : | |

---

Christopher J. DeAngelo. *Pro se* Petitioner.

Gregory E. Smith, Deputy Attorney General, Delaware Department of Justice, Wilmington, Delaware. Attorney for Respondents.

---

## MEMORANDUM OPINION

August 13, 2014
Wilmington, Delaware

**STARK, U.S. District Judge:**

Pending before the Court is an Application For A Writ Of Habeas Corpus Pursuant To 28 U.S.C. § 2254 ("Petition") filed by Petitioner Christopher J. DeAngelo ("Petitioner"). (D.I. 2) For the reasons discussed, the Court will dismiss the Petition and deny the relief requested.

## I.    BACKGROUND

In October 1990, Petitioner was renovating his home when his friend, William Perez, stopped by to collect a debt. *See DeAngelo v. State*, 795 A.2d 667 (Table), 2002 WL 714294, at \*1 (Del. Apr. 22, 2002). Petitioner's wife, Peggy Mitchell, and another friend, Bobby Williams, were present when Perez arrived. Petitioner invited Perez to follow him up a ladder to the loft. Moments later, Mitchell and Williams heard gunshots and Perez fell to the bottom of the ladder. Perez had a gunshot in his head and was bleeding profusely. After Petitioner removed money from Perez's pockets, Petitioner and Williams moved the body to the bathtub. *Id*.

John McGettigan, another friend, arrived shortly after the shooting. Petitioner asked to borrow McGettigan's pickup truck to get some decking materials. Petitioner and Williams placed a bundle wrapped in a blue tarp into the back of the pickup truck and drove to a farm in West Chester, Pennsylvania. During the ride, Petitioner told Williams that his dispute with Perez was over approximately $800 that Petitioner owed Perez for drugs. Williams did not see Petitioner dispose of the body, but Mitchell testified that Petitioner told her that he chopped up the body and burned the remains. *Id*.

Not long after this incident, two witnesses saw Petitioner give five $100 bills to a friend at a bar. One of the bills had the number 1000 written on it, and one of the witnesses testified that, because of the handwritten number, she recognized the bill as being the same one she had given to Perez a week earlier. *Id*.

Perez's wife reported him missing several days after he disappeared, and the police began an investigation. The police questioned Petitioner, but did not file any charges against him. In 1993, a private investigator hired by Perez's wife brought a confidential informant in to speak to Detective William Browne. The confidential informant told Detective Browne that she and several others had seen Perez recently. Detective Browne took down the names of the potential witnesses and tried to contact them. All the witnesses located by Detective Browne denied having seen Perez. *Id.*

On April, 26, 1999, a grand jury indicted Petitioner on the charges of first degree murder and possession of a deadly weapon during the commission of a felony. (D.I. 16 at 2) On August 18, 1999, Delaware extradited Petitioner from Pennsylvania. *Id.* On October 8, 1999, the Delaware Superior Court held a proof positive hearing resulting in Petitioner being held without bail. *Id.* at 3.

In April 2000, after a fifteen day trial, a Delaware Superior Court jury convicted Petitioner of the lesser included offense of second degree murder as well as the weapons possession charge. *Id.* The Superior Court sentenced him to twenty years at Level V imprisonment, suspended after fifteen years for decreasing levels of supervision on the murder conviction, and to fifteen years at Level V incarceration on the weapons possession conviction. *Id.* The Delaware Supreme Court affirmed Petitioner's conviction for murder, but vacated the weapons conviction because the statute of limitations had expired, and remanded the matter for re-sentencing. *DeAngelo*, 2002 WL 714294, at \*5. Thereafter, on June 7, 2002, the Superior Court re-sentenced Petitioner to twenty years at Level V imprisonment, suspended after fifteen years for decreasing levels of supervision. *State v. DeAngelo*, 2002 WL 1308359 (Del. Super.

2

Ct. June 7, 2002). The Delaware Supreme Court affirmed Petitioner's 2002 sentence on May 27, 2003. *DeAngelo v. State*, 825 A.2d 838 (Table), 2003 WL 21321719 (Del. May 27, 2003). On June 11, 2003, Petitioner filed in the Delaware Supreme Court a motion for reargument of its May 27, 2003 decision, which the Delaware Supreme Court denied on June 19, 2003. (D.I. 18, Appellant's App. in *DeAngelo v. State*, No. 255,2004)

On February 23, 2004, Petitioner filed a petition for writ of habeas corpus in the Delaware Superior Court. (D.I. 16 at 3) The Superior Court denied the petition on March 4, 2004. (*Id.*) The Delaware Supreme Court affirmed that decision, but remanded the matter and directed the Superior Court to enter a new sentencing order expressly vacating the weapons conviction. *DeAngelo v. State*, 870 A.2d 1191 (Table), 2004 WL 3248441 (Del. Mar. 22, 2004). On March 24, 2005, the Superior Court re-imposed the sentence order of June 16, 2000, but added a note expressly vacating the weapons conviction. (D.I. 16 at 4)

Petitioner filed two more state habeas corpus petitions, which the Superior Court denied. (D.I. 16 at 4) On June 13, 2006, Petitioner filed a motion for post-conviction relief pursuant to Delaware Superior Court Criminal Court Rule 61 ("Rule 61 motion"). The Delaware Superior Court denied the Rule 61 motion in August 2007. *State v. DeAngelo*, 2007 WL 2472262 (Del. Super Ct. Aug. 28, 2007). However, the Superior Court later vacated that August 2007 order because Petitioner had not yet filed his reply brief when the decision was rendered. On November 14, 2007, the Superior Court denied Petitioner's Rule 61 motion. The Delaware Supreme Court affirmed that decision on October 7, 2008, and denied reargument on December 22, 2008. *DeAngelo v. State*, 962 A.2d 916 (Table), 2008 WL 4489252 (Del. Oct. 7, 2008).

3

In April 2004, while Petitioner was collaterally challenging his state criminal conviction, he filed a lawsuit in this Court pursuant to 42 U.S.C. § 1983, relating to his state criminal case. (D.I. 16 at 4) The Court dismissed Petitioner's § 1983 Complaint as frivolous on November 15, 2005. *DeAngelo v. Brady*, 2005 WL 3069651 (D. Del. Nov. 15, 2005) The Third Circuit Court of Appeals affirmed that decision on June 19, 2006. *DeAngelo v. Brady*, 185 F. App'x 173 (3d Cir. 2006).

Petitioner filed the instant habeas Petition in 2009. The State filed an Answer asserting that the Court should deny it as time-barred or, alternatively, as procedurally barred. (D.I.16) Based on the record provided, the Honorable Joseph J. Farnan, Jr. denied the Petition as time-barred, in part due to the determination that Petitioner's untimely filed post-conviction appeal was not properly filed which, in turn, meant that Petitioner's post-conviction appeal statutorily tolled the limitations period only for thirty days. (D.I. 21; D.I. 22) Petitioner filed a motion for reargument, arguing that Court should deem his Petition timely filed due to the fact that the Delaware Supreme Court had granted him permission to file an out-of-time appeal, thereby demonstrating that the statutory tolling afforded his Petition should include the entire time his post-conviction appeal was pending. (D.I. 24) Petitioner attached the necessary documentation to support this contention. In its response, the State did not refute the documentation, but still contended that the Petition was untimely. (D.I. 30) Alternatively, however, the State asserted that the Court should deny the Petition as procedurally barred. (*Id.*)

The case was reassigned to this Court's docket. After reviewing the newly supplemented record, the Court granted Petitioner's motion for re-argument, determined that the Petition was timely filed, and re-opened the case. (D.I. 36; D.I. 37)

4

## III. GOVERNING LEGAL PRINCIPLES

### A. The Antiterrorism and Effective Death Penalty Act of 1996

Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA")

"to reduce delays in the execution of state and federal criminal sentences . . . and to further the

principles of comity, finality, and federalism." *Woodford v. Garceau*, 538 U.S. 202, 206 (2003)

(internal citations and quotation marks omitted). Pursuant to AEDPA, a federal court may

consider a habeas petition filed by a state prisoner only "on the ground that he is in custody in

violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a).

AEDPA imposes procedural requirements and standards for analyzing the merits of a habeas

petition in order to "prevent federal habeas 'retrials' and to ensure that state-court convictions are

given effect to the extent possible under law." *Bell v. Cone*, 535 U.S. 685, 693 (2002); *see also*

*Woodford*, 538 U.S. at 206.

### B. Exhaustion and Procedural Default

Absent exceptional circumstances, a federal court cannot grant habeas relief unless the

petitioner has exhausted all means of available relief under state law. *See* 28 U.S.C. § 2254(b);

*O'Sullivan v. Boerckel*, 526 U.S. 838, 842-44 (1999). AEDPA states, in pertinent part:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to
> the judgment of a State court shall not be granted unless it appears that –
>
> (A) the applicant has exhausted the remedies available in the courts of the State; or
>
> (B)    (i) there is an absence of available State corrective process; or
>
>        (ii) circumstances exist that render such process ineffective to protect the rights of
>        the applicant.

28 U.S.C. § 2254(b)(1).

The exhaustion requirement is based on principles of comity, requiring a petitioner to give "state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan*, 526 U.S. at 844-45; *see also Werts v. Vaughn*, 228 F.3d 178, 192 (3d Cir. 2000). A petitioner satisfies the exhaustion requirement by demonstrating that the habeas claims were "fairly presented" to the state's highest court, either on direct appeal or in a post-conviction proceeding. *See Lambert v. Blackwell*, 134 F.3d 506, 513 (3d Cir. 1997); *Coverdale v. Snyder*, 2000 WL 1897290, at *2 (D. Del. Dec. 22, 2000). "Fair presentation of a claim means that the petitioner must present a federal claim's factual and legal substance to the state courts in a manner that puts them on notice that a federal claim is being asserted." *Holloway v. Horn*, 355 F.3d 707, 714 (3d Cir. 2004).

A petitioner's failure to exhaust state remedies will be excused if state procedural rules preclude him from seeking further relief in state courts. *See Lines v. Larkins,* 208 F.3d 153, 160 (3d Cir. 2000); *Teague v. Lane,* 489 U.S. 288, 297-98 (1989). Although technically exhausted, such claims are nonetheless procedurally defaulted. *See Lines,* 208 F.3d at 160; *Coleman v. Thompson*, 501 U.S. 722, 750-51 (1991). Similarly, if a petitioner presents a habeas claim to the state's highest court, but that court "clearly and expressly" refuses to review the merits of the claim due to an independent and adequate state procedural rule, the claim is exhausted but procedurally defaulted. *See Coleman*, 501 U.S. at 750*; Harris v. Reed*, 489 U.S. 255, 260-64 (1989).

Federal courts may not consider the merits of procedurally defaulted claims unless the petitioner demonstrates either cause for the procedural default and actual prejudice resulting

therefrom, or that a fundamental miscarriage of justice will result if the court does not review the claims. *See McCandless v. Vaughn,* 172 F.3d 255, 260 (3d Cir. 1999); *Coleman,* 501 U.S. at 750-51. To demonstrate cause for a procedural default, a petitioner must show that "some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Murray v. Carrier,* 477 U.S. 478, 488 (1986). To demonstrate actual prejudice, a petitioner must show "that [the errors at trial] worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *Id.* at 494.

Alternatively, a federal court may excuse a procedural default if the petitioner demonstrates that failure to review the claim will result in a fundamental miscarriage of justice. *See Edwards v. Carpenter,* 529 U.S. 446, 451 (2000); *Wenger v. Frank,* 266 F.3d 218, 224 (3d Cir. 2001). A petitioner demonstrates a miscarriage of justice by showing a "constitutional violation has probably resulted in the conviction of one who is actually innocent." *Murray,* 477 U.S. at 496. Actual innocence means factual innocence, not legal insufficiency, *Bousley v. United States*, 523 U.S. 614, 623 (1998), and is established if no reasonable juror would have voted to find the petitioner guilty beyond a reasonable doubt, *see Sweger v. Chesney,* 294 F.3d 506, 522-24 (3d Cir. 2002). A petitioner establishes actual innocence by asserting "new reliable evidence – whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence – that was not presented at trial," showing that no reasonable juror would have found the petitioner guilty beyond a reasonable doubt. *Hubbard v. Pinchak*, 378 F.3d 333, 339-40 (3d Cir. 2004).

## C.   **Standard of Review**

When a state's highest court has adjudicated a federal habeas claim on the merits, the federal court must review the claim under the deferential standard contained in 28 U.S.C.

7

§ 2254(d). A claim has been "adjudicated on the merits" for the purposes of 28 U.S.C. § 2254(d) if the state court decision finally resolves the claim on the basis of its substance, rather than on a procedural or some other ground. *See Thomas v. Horn*, 570 F.3d 105, 115 (3d Cir. 2009).

Pursuant to 28 U.S.C. § 2254(d), federal habeas relief may only be granted if the state court's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or the state court's decision was an unreasonable determination of the facts based on the evidence adduced in the trial. 28 U.S.C. § 2254(d)(1) & (2); *see also Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Appel v. Horn*, 250 F.3d 203, 210 (3d Cir. 2001). This deferential standard of § 2254(d) applies even "when a state court's order is unaccompanied by an opinion explaining the reasons relief has been denied;" as recently explained by the Supreme Court, "it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." *Harrington v. Richter*, __ U.S. __, 131 S.Ct. 770, 784-85 (2011).

When reviewing a habeas claim under § 2254(d), a federal court must presume that the state court's determinations of factual issues are correct. *See* 28 U.S.C. § 2254(e)(1); *Appel*, 250 F.3d at 210. This presumption of correctness applies both to explicit and implicit findings of fact, and is only rebutted by clear and convincing evidence to the contrary. *See* 28 U.S.C. § 2254(e)(1); *Campbell v. Vaughn*, 209 F.3d 280, 286 (3d Cir. 2000); *Miller-El v. Cockrell*, 537 U.S. 322, 341 (2003) (stating that clear and convincing standard in § 2254(e)(1) applies to factual issues, whereas unreasonable application standard of § 2254(d)(2) applies to factual decisions).

8

## III. DISCUSSION

Viewing the Petition and Memorandum in Support together, the Court discerns eleven distinct grounds for relief: (a) six claims alleging ineffective assistance of counsel (Claims One through Six);[1] (b) the State violated *Brady v. Maryland* by withholding a 1993 police report stating that the victim was alive (Claim Seven);[2] (c) the State engaged in prosecutorial misconduct by prosecuting a time-barred PDWDCF charge (Claim Eight); (d) the State denied Petitioner his right to due process rights by improperly pursuing a time-barred PDWDCF charge (Claim Nine); (e) the trial court denied Petitioner his right to due process by instructing the jury on the PDWDCF charge (Claim Ten); and (f) the trial judge was biased against Petitioner and denied him due process by permitting the PDWDCF charge to reach the jury (Claim Eleven).

### A. Claims One Through Six: Ineffective Assistance of Counsel

Petitioner presented all six ineffective assistance of counsel claims to the Delaware Supreme Court on post-conviction appeal, and the Delaware Supreme Court denied them "for the reasons set forth in the Superior Court's well-reasoned decision dated November 14, 2007." *DeAngelo*, 2008 WL 4489252, at *1. The Delaware Supreme Court explained that the "Superior Court did not err in finding that [Petitioner's] allegations of ineffective assistance of counsel during his 2000 criminal trial lacked any support in the record." *Id.* In these circumstances, habeas relief will only be warranted if the Delaware Supreme Court's decision was either

---

[1]The Court has combined the ineffective assistance of counsel allegations contained in Claims Five and Seven of the original Petition into one claim, hereinafter referred to as Claim Five. Thus, although the Petition sets forth seven separate claims alleging ineffective assistance of counsel, the Court views the Petition as only raising six ineffective assistance of counsel claims.

[2]Claim Two of the Memorandum in Support asserts an independent *Brady* claim not contained in the original Petition. The Court has included the *Brady* Claim as one of the arguments to be considered in this proceeding.

contrary to, or an unreasonable application of, clearly established Federal law, or constituted an unreasonable determination of facts based on the evidence presented.

The clearly established Supreme Court precedent governing ineffective assistance of counsel claims is the two-pronged standard enunciated by *Strickland v. Washington*, 466 U.S. 668 (1984), and its progeny. *See Wiggins v. Smith*, 539 U.S. 510 (2003). Under the first *Strickland* prong, a petitioner must demonstrate that "counsel's representation fell below an objective standard of reasonableness," with reasonableness being judged under professional norms prevailing at the time counsel rendered assistance. *Id.* at 688. Under the second *Strickland* prong, a petitioner must demonstrate "there is a reasonable probability that, but for counsel's error the result would have been different." *Id.* at 687-96. A reasonable probability is a "probability sufficient to undermine confidence in the outcome." *Id.* at 688.

In order to sustain an ineffective assistance of counsel claim, a petitioner must make concrete allegations of actual prejudice and substantiate them or risk summary dismissal. *See Wells v. Petsock*, 941 F.2d 253, 259-60 (3d Cir. 1991). Although not insurmountable, the *Strickland* standard is highly demanding and leads to a "strong presumption that the representation was professionally reasonable." *Strickland*, 466 U.S. at 689.

Notably, a state court's decision regarding an ineffective assistance of counsel claim is owed "double deference" when reviewed under § 2254(d)(1), because

[t]he standards created by *Strickland* and § 2254(d) are both "highly deferential," and when the two apply in tandem, review is doubly so. The *Strickland* standard is a general one, so the range of reasonable applications is substantial. Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). **When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard.**

10

*Richter*, 131 S.Ct. at 788 (emphasis added) (internal citations omitted). When assessing the

reasonableness of counsel's performance under *Strickland*, there "is a strong presumption that

counsel's attention to certain issues to the exclusion of others reflects trial tactics rather than

sheer neglect," and "*Strickland* [] calls for an inquiry into the objective reasonableness of

counsel's performance, not counsel's subjective state of mind." *Richter*, 131 S.Ct. at 790

(internal citation omitted). In turn, "[w]hen assessing prejudice under *Strickland*, the question is

"whether it is reasonably likely the result would have been different" but for counsel's

performance, and the "likelihood of a different result must be substantial, not just conceivable."

*Id*. Finally, when viewing a state court's determination that a *Strickland* claim lacks merit

through the lens of § 2254(d), federal habeas relief is precluded "so long as fairminded jurists

could disagree on the correctness of the state court's decision." *Id*. at 786. In other words,

> [a]s a condition for obtaining habeas corpus from a federal court, a state prisoner must
> show that the state court's ruling on the claim being presented in federal court was so
> lacking in justification that there was an error well understood and comprehended in
> existing law beyond any possibility for fairminded disagreement.

*Id*. at 786-87.

Turning to the § 2254(d) inquiry in this case, the Court notes that the Delaware Supreme

Court analyzed Petitioner's ineffectiveness assistance of counsel claims pursuant to the

*Strickland* framework. Therefore, the Delaware Supreme Court's decision is not contrary to

clearly established law. *See Williams*, 529 U.S. at 406 ("[A] run-of-the mill state-court decision

applying the correct legal rule from [Supreme Court] cases to the facts of a prisoner's case [does]

not fit comfortably within § 2254(d)(1)'s 'contrary to' clause.").

11

Additionally, for the following reasons, the Court concludes that the Delaware Supreme Court reasonably applied *Strickland* in denying Petitioner's ineffective assistance of counsel allegations.

### 1. Claim One

In Claim One, Petitioner contends that defense counsel should have moved to dismiss as time-barred the PDWDCF charge from the indictment prior to trial. Petitioner raised this argument in his Rule 61 motion. After explaining that Petitioner's successful appeal of his PDWDCF conviction resulted in said conviction being vacated, the Superior Court concluded that Petitioner could not demonstrate any prejudice stemming from trial counsel's error that impacted his murder conviction. Consequently, the Superior Court denied the instant ineffective assistance of counsel claim.

In this proceeding, Petitioner has not demonstrated that trial counsel's failure to file a motion to dismiss the PDWDCF charge from the indictment impacted his murder conviction. Accordingly, the Court concludes that the Delaware Supreme Court reasonably applied *Strickland* in denying this claim due to lack of prejudice.

### 2. Claim Two

In Claim Two, Petitioner contends that trial counsel represented him while operating under two conflicts of interest. According to Petitioner, the first conflict of interest was created by the billing arrangement between defense counsel, Petitioner, and Petitioner's mother, and the second conflict of interest was created when defense counsel cooperated with prosecutors to convict him.

12

Petitioner presented these two arguments in his Rule 61 motion, and counsel responded to

the allegations in his Rule 61 affidavit. With respect to the fee arrangement, counsel explains

that:

> defendant was unable to pay counsel the fees required in preparation for and conduct of a
> multi-week jury trial in a capital murder case, and that counsel agreed to forego payment
> at that time. Instead, defendant's mother agreed to entry of a judgment lien against
> defendant's mother's house in Pennsylvania, as happens when defendants and their
> lawyers so agree. Counsel, as an accommodation to the defendant, agreed between
> himself and Mrs. DeAngelo to wait until the house was sold or no longer occupied before
> realizing the proceeds from that promise to pay. No prejudice to the defendant resulted
> from the arrangement. To the contrary, the defendant received representation when he
> needed it in a complex capital murder case, and counsel has never yet moved to collect
> the funds secured by the judgment in his favor.

(D.I. 18, Affid. of John J. Duffy at 6) As for Petitioner's contention that defense counsel

cooperated with the prosecution, counsel's Rule 61 affidavit "denies he has, here or any time,

aided the Prosecutor in a criminal prosecution against any client, or that any conflict of interest

existed or exists to representing this defendant." (*Id.*)

After reviewing Petitioner's allegations in context with the record and the explanations

provided in counsel's Rule 61 affidavit, the Superior Court denied Claim Two for being

unsupported by the record. In this proceeding, Petitioner has failed to provide clear and

convincing evidence rebutting the Superior Court's determination that Claim Two is factually

baseless. Accordingly, the Court concludes that the Delaware Supreme Court's affirmance of

the Superior Court's decision amounted to a reasonable application of *Strickland*.

### 3. Claims Three and Four

In Claim Three, Petitioner contends that trial counsel "knowingly introduced false and

fabricated evidence and hearsay statements from the State's Number One Witness John Miller

(who was available but not called to trial) accusing [Petitioner] of murder and related offenses,

13

which were contained in the affidavit of probable cause used to arrest [Petitioner], for the truth of the matter through the testimony of a police officer." (D.I. 2 at 11) Petitioner contends that this testimony should have been prohibited because the "trial judge, the Attorney General, and defense counsel had been repeatedly informed by witness Miller in a series of letters received by the trial judge during the course of the trial [] advising that all of Miller's allegations accusing [Petitioner] of murder were totally false." (D.I. 15 at 40) The Court views the essence of Claim Three as contending that trial counsel should have prevented Detective Cunningham from testifying about Miller's police statements. Claim Four contends that counsel should have called Miller as a witness to confront him about the allegedly fabricated statements he made to the police, and that counsel also should have provided Miller's exculpatory letters to the jury.

After reviewing Petitioner's Rule 61 motion, the Superior Court concluded that Petitioner's generalized assertions did not support a claim for ineffective assistance of counsel. The Delaware Supreme Court affirmed that decision.

In this case, the Court concludes that the Delaware Supreme Court reasonably applied *Strickland* in denying Claims Three and Four. At trial, defense counsel cross-examined Detective Robert Cunningham about the sworn statement he gave to secure Petitioner's arrest warrant. Detective Cunningham admitted that information on how Petitioner disposed of Mr. Perez's body came from a jailhouse informer named John Miller. As counsel explains in his Rule 61 affidavit, "there were a number of corrupt or polluted sources in this case, one of whom was DeAngelo's former wife/paramour, who testified at trial. Part of effective advocacy for defendant at trial was to discredit this sort of witness (as another example, John Miller), who brokers his or her story in exchange for a personal benefit." (D.I. 18, Affid. of John J. Duffy at 7) During his cross-examination of Detective Cunningham, Petitioner's counsel extracted the

14

information that Miller was a career criminal doing a thirty year sentence who hoped to somehow get out of jail by providing information about Petitioner. (D.I. 18, Appellant's App., Vol. II of Two, at AA142-43) This information discredited Miller's credibility. Moreover, by cross-examining Detective Cunningham about the information provided by Miller, counsel highlighted for the jury the inconsistent theories that the State had pursued at different points in the investigation. (*Id.*)

After viewing counsel's cross-examination of Detective Cunningham in context with the fact that the State was unable to produce Perez's body, the Court concludes that counsel's tactical decision to cross-examine Detective Cunningham about John Miller created doubt about the strength of the State's case and, therefore, constituted sound trial strategy. In turn, given Petitioner's failure to provide anything rebutting the strong presumption that counsel's decision to pursue this line of defense was reasonable, the Court concludes that the Delaware Supreme Court reasonably applied *Strickland* in holding that counsel's cross-examination of Detective Cunningham did not amount to ineffective assistance, and was also based on a reasonable determination of the facts.

Claim Four's assertion that counsel was ineffective for failing to call Miller as a defense witness to refute Detective Cunningham's testimony is similarly unavailing. In his Rule 61 affidavit addressing Petitioner's allegations, defense counsel explains:

[Petitioner] misconstrues the role of Miller in the case's facts. He was the well-spring from which the dormant unsolved disappearance of the [victim] turned into a murder case. He was not, however, an important fact witness in the case and of no relevance, except as an example of mischief a cooperating prosecution witness can be to a fair and neutral trial.

[Petitioner] here complains essentially that John Miller, a jail informer, ought to have been invited to testify at [Petitioner's] trial. Counsel disagrees and concluded that no

15

benefit to [Petitioner's] cause could have resulted from such testimony. Indeed, the risk of opening a Pandora's Box militated strongly against such an amateur blunder.

*DeAngelo*, 2007 WL 2472262, at \*2. Given counsel's reasoned and tactical explanation for not calling Miller as a witness, the Court cannot conclude that counsel's performance fell below an objective standard of reasonableness. In addition, Petitioner cannot demonstrate prejudice resulting from counsel's action; the State had several different theories about the method Petitioner used to dispose of Perez's body after the murder, and the rejection of Miller's testimony would not have impacted the State's remaining theories. Thus, the Court concludes that the Delaware Supreme Court's denial of Claim Four involved a reasonable application of *Strickland* and, in turn, was based on a reasonable determination of the facts.

Accordingly, the Court will deny Claims Three and Four.

## 4. Claim Five

In Claim Five, Petitioner contends that trial counsel rendered ineffective assistance by failing to object to the admission of evidence of other bad acts, namely, the uncharged crimes of abuse of a corpse and tampering with physical evidence. According to Petitioner, this evidence was impermissibly admitted through the testimony of prosecution witnesses who provided multiple theories regarding the method of disposal for Perez's body.

This argument is unavailing. As an initial matter, the Court notes that the prosecution is free to pursue whatever theories it wants about the charged offenses, provided that the theories are not logically inconsistent. *Cf. Charbonneau v. State*, 904 A.2d 295, 317 (Del. 2006). Second, the allegedly inconsistent theories at issue here centered on how Petitioner disposed of Perez's body and, therefore, did not impact the underlying crime with which Petitioner was charged. In other words, the circumstances surrounding Petitioner's disposal of Perez's body

16

were inconsequential to proving the required elements of the offense Petitioner was charged with, namely, the intentional killing of Perez. Finally, the evidentiary inconsistencies in the State's theories may have worked to Petitioner's benefit, because the jury convicted him of the lesser included offense of second degree murder instead of first degree murder as charged. Petitioner cannot demonstrate that he suffered prejudice as a result of counsel's failure to object to the various theories as to what happened to Perez's body after Perez was dead.

### 5. Claim Six

In his final ineffective assistance of counsel claim, Petitioner contends that counsel erred by not objecting to the admission of what he describes as "victim impact evidence," which included, but was not limited to, photographs of Perez and testimony provided by Perez's family members describing the time when he went missing. To the extent the "victim impact evidence" at issue consisted of photographs of the victim as well as testimony from the victim's sister regarding the financial repercussions for the family arising from the victim's death, the Superior Court rejected Petitioner's assertion as baseless after determining that counsel did, in fact, object to the admission of that evidence. *See DeAngelo*, 2007 WL at \*2. The Court accepts as correct the Superior Court's factual finding because Petitioner has not provided any clear and convincing evidence rebutting it. Thus, the Delaware Supreme Court reasonably applied *Strickland* in denying these allegations.

Petitioner also contends that defense counsel was ineffective for failing to object to the "sheer mass of victim impact evidence elicited through the testimony of a literal parade of family members and friends of the alleged victim, including the family attorney" because, pursuant to *Payne v. Tennessee*, 501 U.S. 808 (1991), the admission of such evidence constitutes a *per se* denial of a defendant's due process rights. (D.I. 20 at 13) A liberal reading of Petitioner's Rule

17

61 motion indicates that Petitioner raised this argument in his Rule 61 motion. However, the

Superior Court did not explicitly mention this other alleged victim impact evidence when it

denied Petitioner's Rule 61 motion. Consequently, pursuant to *Johnson v. Williams*, ___ U.S.

___, 133 S.Ct. 1088, 1094-95 (2013), the Court presumes that the Superior Court adjudicated the

merits of this claim when it rejected the more specific victim evidence/ineffective assistance of

counsel argument just discussed. *Id.* (holding that, if a petitioner has presented the habeas claims

to a state court, and the state court opinion addresses some but not all of those claims, the federal

habeas court must presume -- subject to rebuttal -- that the state court adjudicated the

unaddressed federal claims on the merits). In these circumstances, the Court must review this

claim pursuant to the deferential standard of review contained in § 2254(d).

To begin, the Court notes that there is no clearly established Federal law governing the

admission of victim impact evidence during the guilt phase of a non-capital trial. For instance,

although the Supreme Court held in *Payne v. Tennessee* that victim impact evidence may be

admissible during the **penalty phase** of a **capital case**, not during the guilt phase, the *Payne*

Court did not establish a *per se* constitutional bar to the admission of victim impact statements

during the **guilt phase** of a **non-capital** trial. *See Payne*, 501 U.S. at 827; *see also Booth v.*

*Maryland*, 482 U.S. 496, 509 n.12 (1987), *overruled on other grounds by Payne v. Tennessee*,

501 U.S. 808, 827 (1991) (*Booth* stating it implies no opinion as to use of victim impact evidence

in non-capital cases). Even in capital cases, the "Court has left state and federal courts unguided

in their efforts to police the hazy boundaries between permissible victim impact evidence and its

impermissible, unduly prejudicial forms."[1] *Kelly v. California*, 129 S.Ct. 564, 566 (2008) (Stevens, J., writing for himself in connection with denial of petition for writs of certiorari).

Given the absence of a clear directive from the United States Supreme Court or the Third Circuit regarding the admission of victim impact evidence during the guilt phase of a non-capital trial, counsel's failure to object to the victim impact evidence did not amount to *per se* ineffective assistance of counsel. In this situation, the Court will treat the allegedly erroneous admission of victim impact evidence during the guilt phase of petitioner's non-capital case like any other alleged state evidentiary error. As a result, counsel's failure to object to the victim impact evidence will only amount to constitutionally ineffective assistance if the admission of such evidence constituted an error so pervasive as to have denied the defendant a fundamentally fair trial.[2] *See Payne*, 501 U.S. at 825; *Keller v. Larkins*, 251 F.3d 408, 413 (3d Cir. 2001). Petitioner has not met this burden.

To begin, there is no indication that an objection to the "victim impact evidence" about which Petitioner complains would have been successful. As explained by the State in its Answer to Petitioner's Rule 61 motion,

---

[1] Delaware follows the rule articulated in *Payne* and permits the admission of victim impact evidence during the penalty phase of both capital and non-capital cases. *See Petition of State*, 597 A.2d 1 (Del. 1991). Although Delaware's rule regarding the admission of victim impact evidence during the guilt phase of non-capital cases is not clear, any such rule would be a matter of state law and would not present a federal constitutional argument.

[2] This inquiry is the same analysis utilized by federal courts when presented with a claim that a state court made an erroneous evidentiary ruling. As explained by the Third Circuit, "[w]hen it must be said that the probative value of such [erroneously admitted] evidence, though relevant, is greatly outweighed by the prejudice to the accused from its admission, then use of such evidence by a state may rise to the posture of fundamental fairness and due process of law." *Lesko v. Owens*, 881 F.2d 44, 52 (3d Cir. 1989).

19

[t]he prosecution had to prove that [Petitioner] killed Perez. Evidence of Perez's close relationship with his family and his sudden disappearance and total lack of communication with his family was therefore indicative of foul play. Both the trial judge and defense counsel recognized the relevance. Indeed, before Perez's mother testified, defense counsel conceded the probative value of testimony about Perez's relationship with his family as the prosecution attempted to prove that [Petitioner] killed Perez. *See, e.g.*, Tr. 4/10/2000 at 13 (court noting that "[t]he State's point is that they want to show Perez was entrenched with a family and make it less likely he would have voluntarily disappeared."); *Id.* at 15 (court again noting "... And I think it is completely going to be admissible for the State to get into the record that Perez had a life, had children, what the ages are ..."); Tr. 4/19/2000 at 102 (defense counsel conceding the probative value and relevance of Perez's relationship with his family and the prosecution's burden of proving that Perez was murdered). Moreover, once the [trial] court indicated that evidence of Perez's family situation was admissible, counsel can hardly be deemed to have acted unreasonably by failing to repeatedly object.

(D.I.18, *DeAngelo v. State*, Case No. 637,2007, Appellant's App. Vol I, Exh. 6 "Answer to

Motion for Postconviction Relief" at 13-14) Although neither the State nor Petitioner have

provided a copy of the transcript excerpts cited by the State in the foregoing quote, the portions

of the transcript actually provided in this proceeding do demonstrate the trial court's

determination that the testimony offered by the family members was generally admissible, and

also demonstrates counsel's concession with respect to its admissibility. For example, the

following discourse occurred when defense counsel objected to Perez's sister's testimony about

recent hard times:

DEFENSE COUNSEL: My objection, sir, is that all these questions are just pointed at trying to prove to this jury that this [Perez] was a nice man. That's not of relevance here.

STATE: I'm not trying to prove that he was a nice man. My point is that the State has to prove that the victim is dead. We don't have a body. We are entitled to ask what his known practice, what his known procedure was, what his relationship was with people – people that – that saw him.

DEFENSE COUNSEL: And I didn't object to them.

COURT: No.

20

STATE: And the point is they said in particular in this family, he would help them out when they were in trouble.

COURT: I'm going to overrule.

DEFENSE COUNSEL: But hard times since –

COURT: I'm going to overrule the objection. I think the State does have that obligation to prove it. So it is entitled to develop the closeness of the family members to Willie Perez. It does have an incidental effect of showing that they were a close family, and I understand the sympathy factory, but the jury will be later instructed about sympathy. And the State shouldn't overdo it. I don't think the State has overdone it.

(D.I. 5, Appendix Section, at AA #382)

Moreover, Petitioner's vague assertions of prejudice fail to demonstrate that the admission of the evidence denied him a fair trial. Consequently, the Court concludes that the Delaware Supreme Court reasonably applied *Strickland* in denying Claim Six.

## B. Claim Seven: *Brady* Violation

In Claim Seven, Petitioner asserts that prosecutors violated his right to due process under *Brady v. Maryland,* 373 U.S. 83, 87 (1963), by withholding evidence of a 1993 police report in which a confidential informant claimed to have seen the victim alive. Petitioner presented this argument on direct appeal, and the Delaware Supreme Court denied it as meritless. Therefore, habeas relief will only be available if that decision was contrary to, or an unreasonable application of, clearly established Federal law.

To establish a *Brady* violation, a petitioner must demonstrate that: (1) the prosecution either willfully or inadvertently suppressed evidence; (2) the evidence was favorable to the petitioner because it was exculpatory or had impeachment value; and (3) the evidence was material. *See Lambert v. Blackwell,* 387 F.3d 210, 252 (3d Cir. 2004) (citing *Banks v. Dretke,* 540 U.S. 668 (2004) and *United States v. Perdomo,* 929 F.2d 967, 970 (3d Cir. 1991)).

21

Exculpatory evidence is material if the "evidence could reasonably be taken to put the case in

such a different light as to undermine confidence in the verdict." *Kyles v. Whitley*, 514 U.S. 419,

435 (1995). The *Brady* rule applies to favorable and material evidence affecting the jury's

judgment of a crucial prosecution witness' credibility. *See Giglio v. United States*, 405 U.S. 150,

154 (1972).

After identifying and correctly articulating the *Brady* standard, the Delaware Supreme

Court denied the instant claim presented by Petitioner on direct appeal after determining that the

State did not have the information Petitioner contends was withheld. The Delaware Supreme

Court explained that,

> [w]ith respect to the 1993 Perez "sightings," the record establishes that the police never
> knew the identity of the confidential informant who claimed to have seen Perez in 1993.
> The State, therefore, had no name to disclose to Petitioner.
>
> In short, there were no *Brady* violations because the State did not have the information
> that Petitioner contends the State withheld. Moreover, there is no reasonable probability
> that the alleged *Brady* evidence would have affected the outcome of the trial. [] The
> "sightings" evidence [] had limited value since the witnesses identified by the
> confidential informant denied having seen Perez in 1993.

*DeAngelo*, 2002 WL 714294, at *2. Petitioner has not presented any clear and convincing

evidence demonstrating that anyone actually saw Perez alive in 1993, and the record does not

indicate that such evidence ever existed. In these circumstances, the Court concludes that the

Delaware Supreme Court's denial of Petitioner's *Brady* claim was neither contrary to, nor an

unreasonable application of, clearly established Federal law. Accordingly, the Court will deny

Claim Seven.

### C. Claims Eight, Nine, and Ten: Due Process Violations

Petitioner's eighth, ninth, and tenth claims allege that his due process rights were violated

by the continued prosecution of the PDWDCF charge. Specifically, Claims Eight and Nine

assert prosecutorial misconduct for bringing and prosecuting the PDWDCF charge, and Claim Ten asserts that the trial court violated Petitioner's due process rights by permitting the State to prosecute him on the PDWDCF charge and by instructing the jury on that charge. Petitioner presented these claims to the Superior Court in his Rule 61 motion, and then again to the Delaware Supreme Court on post-conviction appeal. However, both state courts denied the claim as procedurally barred under Delaware Supreme Court Rule 61(i)(3), because Petitioner did not raise these particular due process issues on direct appeal.

By applying the procedural bar of Rule 61(i)(3) to Claims Eight, Nine, and Ten on post-conviction appeal, the Delaware Supreme Court articulated a "plain statement" under *Harris*[1] that its decision rested on state law grounds. Rule 61(i)(3) constitutes an independent and adequate state procedural rule for procedural default purposes. *See McCleaf v. Carroll*, 416 F Supp. 2d 283, 296 (D. Del. 2006). Accordingly, the Court is precluded from reviewing the Claims Eight, Nine, and Ten on their merits absent a showing of cause and prejudice.

Petitioner attempts to establish cause by blaming counsel for failing to raise the due process issues on direct appeal. *See Murray v. Carrier*, 477 U.S. 478, 488-89 (1986) (holding that counsel's ineffectiveness in failing to properly preserve claim for review in state court will suffice to establish cause). As previously explained, Petitioner's PDWDCF conviction and sentence were vacated on direct appeal. Consequently, Petitioner was not prejudiced by counsel's failure to raise the PDWDCF/due process issues on direct appeal which, in turn, means that counsel did not provide constitutionally ineffective assistance. Thus, counsel's performance cannot excuse Petitioner's procedural default.

---

[1]*Harris*, 489 U.S. at 263-64.

Additionally, the miscarriage of justice exception to the procedural default doctrine is

inapplicable, because Petitioner has not provided new reliable evidence of his actual innocence.

Accordingly, the Court will deny Claims Eight, Nine, and Ten as procedurally barred.

### D. Claim Eleven: Judicial Bias

In his final claim, Petitioner contends that the Superior Court judge who presided over his

trial was biased against him, as demonstrated by the judge's failure to *sua sponte* dismiss as

time-barred the PDWDCF charge from the indictment. Petitioner asserts that the judge

"knowingly chose to break the law by continuing the unlawful proceeding," and describes the

judge's bias in the following manner:

> [i]n an unauthorized exercise of his official functions, and in a willful improper
> act in the use of the legal process in a malicious effort to deprive [Petitioner] of
> his basic right to due process, and a fair and impartial trial, and to aid the State to
> corruptly gain a tactical advantage to unlawfully strengthen and support the
> theory of its case, of an alleged murder by a shooting with a deadly weapon, a
> firearm, and clearly demonstrating actual bias and prejudice towards [Petitioner],
> by a trial judge, who is not impartial.

(D.I. 2 at 49) The Superior Court denied this claim as meritless in Petitioner's Rule 61

proceeding, and the Delaware Supreme Court affirmed that decision. Thus, habeas relief will

only be warranted if the Delaware Supreme Court's decision was contrary to, or an unreasonable

application of, clearly established Federal law.

The Due Process Clause requires a fair trial in a fair tribunal, before a judge with no

actual bias against the defendant and no interest in the outcome of a particular case. *See Bracy v.

Gramley*, 520 U.S. 899, 904-05 (1997). Significantly, there is a presumption that judges as

public officials properly discharged their official duties, and a habeas petitioner must rebut this

presumption by showing actual bias. *Id.* at 909. A petitioner demonstrates actual bias by

showing that he was treated "unfairly" by the trial judge, and "there must be an extremely high

24

level of interference by the trial judge which creates a pervasive climate of partiality and unfairness." *Marshall v. Hendricks*, 103 F.Supp.2d 749, 799 (D.N.J. 2000), *rev'd in part on other grounds*, 207 F.3d 36 (3d Cir. 2002). Adverse rulings on motions and objections are not sufficient to prove actual judicial bias. *See Liteky v. United States*, 510 U.S. 540, 555 (1994); *Marshall*, 103 F.Supp.2d at 799.

In Petitioner's case, the Superior Court and the Delaware Supreme Court analyzed the instant claim pursuant to a standard consistent with that announced in *Bracy*. *See Los v. Los*, 595 A.2d 381, 384-85 (Del. 1991). Thus, the Delaware Supreme Court's denial of this claim was not contrary to clearly established Federal law.

In turn, the Delaware Supreme Court's decision involved a reasonable application of *Bracy* and its progeny. Even if the Court were to assume that the trial judge's failure to realize that the PDWDCF charge was time-barred constituted an error of law, it simply does not demonstrate that the judge was actually biased and/or prejudiced against Petitioner. Indeed, the two attorneys representing Petitioner during his trial also failed to recognize that the limitations period for that charge had expired. Accordingly, the Court will deny Claim Eleven.

## IV. CERTIFICATE OF APPEALABILITY

A district court issuing a final order denying a § 2254 petition must also decide whether to issue a certificate of appealability. *See* 3d Cir. L.A.R. 22.2 (2011). A certificate of appealability is appropriate when a petitioner makes a "substantial showing of the denial of a constitutional right" by demonstrating "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

The Court has concluded that Petitioner's habeas claims do not warrant relief. In the Court's view, reasonable jurists would not find this conclusion to be debatable. Accordingly, the Court declines to issue a certificate of appealability.

## V. CONCLUSION

For the reasons discussed, Petitioner's Application For A Writ Of Habeas Corpus Pursuant To 28 U.S.C. § 2254 is **DENIED**. An appropriate Order will be entered.